UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| JASON D. KOERBER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case # 6:19-cv-1070-DB |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § | MEMORANDUM DECISION |
| § | AND ORDER |
| Defendant. § | |

## INTRODUCTION

Plaintiff Jason D. Koerber ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 25).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 9. Plaintiff also filed a reply brief. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 9) is **GRANTED**.

## BACKGROUND

Plaintiff previously applied for benefits alleging a disability onset date of October 7, 2005, and his claim for benefits was denied at the initial level in 2006 and not further appealed. Transcript ("Tr.") 184, 195. In the instant case, Plaintiff filed applications for DIB and SSI on September 1, 2016, alleging disability beginning February 11, 2015 (the disability onset date) (Tr. 15, 161-183),

due to: "(1) herniated discs in back dx 2005; (2) possibly needs surgery; (3) chronic pain; (4) cannot sit/stand/walk for extended periods; and (5) sciatica (Tr. 199). Plaintiff's claims were denied initially on October 25, 2016 (Tr. 60-83, 88-103), after which he requested a hearing (Tr. 104). Administrative Law Judge John G. Farrell (the "ALJ") presided over a video hearing from Buffalo, New York, on September 19, 2018. Tr. 12, 26. Plaintiff appeared and testified from Albany, New York, and was represented by Jeanne Murray, an attorney. *Id*. Rachel Duchon, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on October 26, 2018, finding Plaintiff not disabled. Tr. 12-24. On June 18, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's October 26, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his October 26, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017;

2. The claimant has not engaged in substantial gainful activity since February 11, 2015, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3. The claimant has the following severe impairments: degenerative disc disease, herniated discs in the thoracic and lumbar spine, cervical spondylosis, and lumbar spondylosis with radiculopathy (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) and 404.1567(b)[1] except that he can only occasionally kneel, stoop, bend or crawl;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on February 27,1980 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 11, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 12-24.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on September 1, 2016, Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 24. The ALJ also determined that based on the application for supplemental security benefits protectively filed on September 1, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff contends that the ALJ did not provide adequate reasons for the weight given to the opinion of treating neurosurgeon Gregory Bennett, M.D. ("Dr. Bennett"). *See* ECF No. 8-1 at 17-20. The Commissioner responds that the ALJ properly evaluated Dr. Bennett's opinion and gave multiple good reasons for discounting that opinion. *See* ECF No. 9-1 at 19.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Plaintiff had an initial visit with Dr. Bennett on February 2, 2016, for an evaluation of thoracic pain. Tr. 268. Plaintiff told Dr. Bennett that previous physical therapy ("PT") increased his back pain. *Id*. Dr. Bennett reviewed MRI reports and noted that a large disc herniation at L5-S1 found in 2004 was greatly reduced in size on more recent imaging. *Id*. Upon examination, the doctor stated Plaintiff appeared very anxious and paced in the exam room. Tr. 269-70. His cervical spine was normal; there was marked thoracic spine tenderness, and his spinal range of motion ("ROM") was diminished. Tr. 269. Dr. Bennett also noted marked tenderness in the bilateral trapezius muscles, but both shoulders retained full ROM without pain on joint motion, and his lower extremities were unremarkable. Tr. 269-70. Plaintiff's mental status examination was normal; his neurological exam revealed normal muscle bulk, tone, and movements; and he had normal reflexes, normal sensation, and normal gait and station. Tr. 270. Dr. Bennett assessed pain in the thoracic spine and thoracic radiculitis. *Id*. He ordered an MRI of the thoracic spine and prescribed Baclofen. Tr. 268, 270. An MRI of the thoracic spine, conducted on March 11, 2016, showed mild thoracic spondylosis, well maintained and aligned thoracic vertebral body heights, some disc desiccation with some mild loss of disc space height, and endplate spondylitic spurring. Tr. 271.

Plaintiff returned to Dr. Bennett on April 1, 2016 and reported his back pain had been "waxing and waning in severity but overall [was] progressively worsening." Tr. 273. He reported that bending, prolonged standing, and walking long distances aggravated the pain. *Id*. Dr. Bennett stated that MRIs showed herniated discs at L5-S1 and T5 and T6. *Id*. Examination revealed no tenderness to palpitation of the spine, diminished spinal ROM, and normal findings of the upper and lower extremities, and motor examination was normal. Tr. 274-75. Dr. Bennett assessed

lumbosacral radiculitis and ordered epidural injections. Tr. 275. He also observed that Plaintiff's mood and affect were normal. *Id*.

That same day, Dr. Bennett completed a "Medical Examination for ABAWD Determination" report form.[2] Tr. 624. Dr. Bennett listed diagnoses of "T5-6 disc herniation" that was originally diagnosed on "3/11/[illegible]" and "lumbar disc [illegible] L5-S1" diagnosed in 2005 and stated Plaintiff was unable to work since February 2015. *Id*. The doctor marked on the form that Plaintiff had no limitations in mental functioning. *Id*. He also checked boxes to indicate Plaintiff was very limited in walking, standing, sitting, lifting/carrying, pushing/pulling/bending, and with stairs/other climbing and assessed no limitations in Plaintiff's using his hands, seeing, speaking, or hearing. *Id*. He checked the box indicating that Plaintiff's impairments precluded him from working at least 80 hours monthly. *Id*. The form also noted that Dr. Bennett had treated Plaintiff for two months. *Id*.

On October 13, 2016, Christine Ransom, Ph.D. ("Dr. Ransom"), performed a consultative psychiatric examination. Tr. 322. Plaintiff denied any mental health difficulties and denied any history of psychiatric treatment. *Id*. He stated that he was on Methadone since 2005 because he had previously been dependent on pain medication, but otherwise he had been free of substance dependence for a decade. *Id*. He told Dr. Ransom that he was able to bathe, groom, and dress himself; prepare food and cook, clean, do laundry, and shop. Tr. 324. He said he could drive a car for 30 minutes at a time. *Id*. He liked to play the keyboard, write, meditate, read, go to the library, listen to the radio, watch television, and socialize with friends. *Id*. Mental status examination findings were unremarkable. Tr. 323-24. Dr. Ransom diagnosed "pain medication dependence, in

---

[2] As the Commissioner explained, "ABAWD" stands for the Able Bodied Adult Without Dependents Work Requirement and Time Limits for receiving Supplemental Nutritional Assistance Program ("SNAP") benefits. *See* ECF No. 9-1 (citing https://www.fns.usda.gov/snap/work-requirements.

7

remission; no psychiatric condition; no cognitive deficit;" and opined that Plaintiff had no mental conditions that would interfere with his ability to function on a daily basis Tr. 324.

That same day, Plaintiff attended a consultative examination with John Schwab, D.O. ("Dr. Schwab"). Tr. 318. Plaintiff described activities similar to those he reported to Dr. Ransom. Tr. 318. Dr. Schwab reported the lower thoracic vertebrae were tender, and other exam findings were normal, including normal gait and stance, full squat, full strength, normal sensation, and full ROM throughout. Tr. 318-320. He observed that Plaintiff rose from a chair without difficulty, and he needed no assistance to change and get on and off the exam table. Tr. 319. Dr. Schwab opined Plaintiff had no physical functional restrictions. Tr. 320.

Plaintiff argues that, in assigning diminished weight to Dr. Bennett's opinion, the ALJ failed to properly consider his status as Plaintiff's treating neurologist. *See* ECF No. 8-1 at 14. The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2), 416.927(c)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).[3]

---

[3] The Court notes a recent change to the Administration's regulations regarding the consideration of opinion evidence will eliminate application of this "treating physician rule" for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5848-49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this case, however, the prior version of the regulation applies. *See Smith v. Colvin*, No. 16-CV-6150L, 2018 WL 1210891, at *2 (W.D.N.Y. Mar. 8, 2018).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). Although Plaintiff contends that the ALJ did not provide adequate reasons for the weight given to Dr. Bennett's opinion (*see* ECF No. 8-1 at 17-20), a review of the record shows that the ALJ did, in fact, consider the limitations Dr. Bennett marked on the ABAWD form, and he thoroughly explained his reasons for the weight given to Dr. Bennett's opinion. Tr. 17-18.

As an initial matter, the fill-in-the-box form submitted by Dr. Bennett (Tr. 624-25) is of limited evidentiary value. *Augustine v. Comm'r of Soc. Sec.*, No. 6:15-CV-06145-EAW, 2016 WL 5462836, at *1 (W.D.N.Y. Sept. 28, 2016) (internal citations omitted) (finding that an opinion communicated via a form with minimal commentary "is not particularly useful evidence"); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir 2004) ( a physician's checkmark opinion on a standardized multiple-choice form is "not particularly informative"); *Shipp v. Colvin*, No. 16-CV-919-HBS, 2018 WL 4870748, at *3 (W.D.N.Y. Oct. 9, 2018) (the questionnaire checkmarks that come with no explanation are too conclusory and "[t]he Second Circuit has held that such standardized form opinions are only marginally useful for purposes of creating a meaningful and reviewable factual record.") (internal quotation marks and citations omitted). In this case, there is

little objective evidence in support of the boxes checked. Dr. Bennett's form stated that Plaintiff was unable to work since February 2015 due to physical limitations (Tr. 624), but as the ALJ explained, Dr. Bennett did not specify the basis for his findings. Tr. 17.

The ALJ also noted that the Dr. Bennett completed the opinion form after he had been treating Plaintiff for only two months. Tr. 17-18, 624-625. The record reflects that Dr. Bennett saw Plaintiff just two times, once in February 2016 and once in April 2016. Tr. 269, 274. "[A] physician's medical opinion was not entitled to the extra weight of a treating physician" where the physician "only examined [the] claimant once or twice, did not see that claimant regularly, and did not develop a physician/patient relationship with the claimant . . ." *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039, n.2 (2d Cir. 1983) (treating physician deserves deference based on continuity of treatment relationship)).

Furthermore, the ALJ explained that Dr. Bennett's opinion was unsupported by the medical record and was directly contradicted by Plaintiff's own statements about his activities.  Tr. 18. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). As the ALJ noted, Plaintiff had herniated discs. Tr. 14, 15, 16, 355, 368. However, the ALJ correctly stated that other record evidence, including Dr. Bennett's own reports, contradicted Dr. Bennett's form limitations. At Plaintiff's first visit in February 2016, the clinical exam found only tenderness of the thoracic spine and some spinal ROM limitations, but was otherwise normal with full strength, normal sensation, and normal gait. Tr. 269-70. The April 2016 exam found only some reduced spinal ROM, and, unlike his first exam, there was no tenderness.  Tr. 274-75. In October 2016, six months after he completed the form, Dr. Bennett reported entirely normal findings with full ROM throughout, normal gait, and normal strength and sensation. Tr. 388-89.

Reports from other medical sources similarly show minimal or no abnormal findings. An exam in August 2015 revealed normal findings and full ROM of his back, and the only abnormal results were slightly positive straight leg raises and back tenderness at the extremes of ROM. Tr. 614. In October 2015, Plaintiff's gait and coordination were reported as normal; his lower extremity reflexes were intact; his motor and sensory exams were normal; and his lower extremities were pain free with full ROM. Tr. 605. In October 2016, Dr. Schwab reported Plaintiff had only some thoracic tenderness, and no other abnormal findings and opined that Plaintiff had no functional limitations. Tr. 318-20. "An ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Bump v. Comm'r of Soc. Sec.*, No. 5: 15-CV-1077 (GTS), 2016 U.S. Dist. LEXIS 149419, at *9 (N.D.N.Y. Oct. 28, 2016) (emphasis added). In August 2017, Plaintiff's primary care provider reported normal exam results with good ROM of the lumbar spine and normal reflexes. Tr. 457.

On May 2, 2018, Plaintiff presented to Shyamal Majithia. M.D. ("Dr. Majithia"), at Western New York Immediate Care, seeking a second opinion and a PT referral. Tr, 494. Examination was unremarkable, and there were no specific findings related to Plaintiff's back, other than an assessment of "chronic back pain." Tr. 496. Additionally, Plaintiff admitted to Dr. Majithia that he was seeking a second opinion because his PCP recently told him he was "ok to work." *Id*. Additionally, although Plaintiff testified that in February 2015, his doctor gave him a note restricting him from work for two weeks (Tr. 33), this actually supports the ALJ's finding of non-disability, because opinions of partial or temporary disability are not indicative of complete disability. *See Verginio v. Apfel*, No. 19-CV-456, 1998 WL 743706, at *8 (N.D.N.Y. Oct. 23, 1998). Furthermore, in February 2015, Frederick McAdam, M.D. ("Dr. McAdam"), of Buffalo

11

Spine and Sports Medicine, recommended that Plaintiff contact VESID for vocational assistance, which seems to suggest that Dr. McAdam believed Plaintiff retained the ability to work. Tr. 355. Thus, the record shows that no other treating or examining source provided an opinion that Plaintiff was disabled due to his spinal impairment, and Dr. Bennett stood alone in his extreme opinion regarding Plaintiff's impairments and his ability to work. Tr. 624

The ALJ also discounted the opinion from Dr. Bennett based on Plaintiff's extensive activities. Tr. 17-18. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x. 5, 9 (2d Cir. 2017) (finding that the ALJ could rely on activities of daily living to formulate the RFC assessment). Plaintiff's reports to Social Security, his statements to Dr. Schwab and Dr. Ransom, and his testimony at the hearing establish that Plaintiff lived alone in an apartment, performed his own personal care, cleaned his apartment, prepared meals, cooked, and washed dishes. Tr. 44-45, 209, 210-211, 318, 324. Although he initially reported that he did his own laundry (Tr. 211, 318, 324), he later changed his story and testified that his mother helped some with laundry (Tr. 45). He traveled by walking or driving (Tr. 31, 212, 324) and shopped in stores weekly (Tr. 45, 212, 318, 324). He played the keyboard 10 hours weekly, and he also spent time reading, meditating, watching television, and walking. Tr. 46, 213, 318, 324). Plaintiff reported that he played music with a close friend once per week and usually spent one to three days per week socializing and interacting with friends and family. Tr. 46-47, 213, 318, 324. Plaintiff also stated that he went to church weekly and went to the library three or four times each week. Tr. 213.

Furthermore, the record demonstrates that Plaintiff had only conservative treatment with courses of PT and some injections (Tr. 275, 284, 332, 428, 443, 463. Notably, in June 2017, Plaintiff stated that PT treatment "helped his low back problems immensely." Tr. 461. Further, in

October 2017, the physical therapist stated that Plaintiff's cervical spine ROM was within functional limits and his soft tissue dysfunction had improved. Tr. 443.

Based on the medical evidence summarized above, including Dr. Schwab's opinion that Plaintiff had no physical functional limitations, Plaintiff's description of his daily activities, and his conservative treatment, the ALJ properly declined to give Dr. Bennett's fill-in-the-box form opinion any meaningful weight. *See Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. Apr. 25, 2011); *see also* 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (d)(3)-(6), 416.927(d)(2)(i)-(ii), (d)(3)-(6) (explaining that deference accorded to treating physician's opinion may be reduced based on consistency of opinion with the rest of the medical record, and any elements "which tend to…contradict the opinion").

Contrary to Plaintiff's contention the ALJ's decision complies with the Second Circuit's recent decision in *Estrella v. Berryhill*, 925 F.3d 90 (2d Cir. 2019) (per curiam). *See* ECF No. 8-1 at 13-17. *Estrella* requires an ALJ to "explicitly consider" the regulatory factors at 20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5), described by the Court as the Burgess Factors,[4] when assigning other than controlling weight to the opinion of a treating physician. *Estrella*, 925 F.3d at 95-96 (citing *Burgess v. Astrue*, 537 F.3d 117, 129; 20 C.F.R. § 404.1527(c)(2)) (other citations omitted)). As discussed above, the ALJ here explained that the form did not specify the basis for the doctor's assessment; the doctor had only been treating Plaintiff for two months; and the opinion was unsupported by the medical record and directly contradicted by Plaintiff's own statements about his activities. Tr. 17-18, 624-625. Thus, the ALJ's analysis withstands the scrutiny prescribed by *Estrella*. The Court will affirm the Commissioner's decision if a "searching review

---

[4] The Burgess Factors are essentially the treating physician factors noted above: (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty.

13

of the record" assures the Court "that the substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96 (citing *Halloran*, 362 F.3d at 32).

While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted). That is not the case here. More than substantial evidence supported the ALJ's conclusion that Plaintiff retained the RFC to perform light work with the exceptions noted. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE